1, 3, 2, 1, United States versus Carlos Cruz Rivera. I'd like to reserve two minutes for a rebuttal if I may. Mr. Cruz Rivera raises four issues on appeal. The first is that federal carjacking is not a crime of violence under either 924C clause. Your Honors, I would submit that this case is an opportunity for this panel to lay the residual clause to rest in a well-marked grave. The government will be raising the residual clause issue in many cases to come, and this case is a unique opportunity for this panel to lay it to rest before too much appellate ink is spilled litigating it. We have the same thing here, though. We have the fourth clause that's in play as well. Yes. Could a moot court need to get to the residual clause? It may. My position is that the fourth clause is not satisfied here because carjacking is overbroad. Intimidation can be committed with nonviolent conduct or words. And so, you know, it's up to us. But you already have these two opinions, right, Ellison and Hunter. I mean, intimidation is enough. To date, these have not been applied to carjacking. And I have to point out that the reasoning of Ellison is in marked contrast to the reasoning in White v. Lynch, where Your Honor refused to read between the lines and actually required that a state predicate actually contain an element of threatened use of force. Ellison tends to infer and imply an element where 924C actually, the plain language of 924C, actually requires that the element require a threatened use of force. So the element either is there or isn't there. It doesn't matter whether you imply it or whether it's a threat. Once it's there, it's there. Right. So what I'm saying is that you need a judicial interpretation to read into the word intimidation. And here, the word intimidation, if my client were to pull out the statute and the jury instructions for carjacking, he would come away with the understanding that he could commit carjacking by demanding someone's car without any threat of violence, without any threat of use of force. But it has to be with the intent to cause death or serious bodily harm. Yes. So the threat with that intent. Yes. 924C does not cover the element of intent. Why would someone give up their car if the circumstances were not such as to pose some intimidation? Maybe it's wisdom. I certainly would give up my car if I feared that something might happen if I did not do it. What would you fear would happen? That's a good question, but I don't know. It could be speculation. But wouldn't it be the thing you feared is that some harm would come to you if you didn't do it? It is. It's a perfectly reasonable thing. What a defendant, I would think, would be arguing the government has to prove to prove that that element of carjacking was met. Yes, but you're... If I just said, it's a very nice car, I'd like to have it, that wouldn't do, I would think. Yes, but it goes into a couple problems. One, you are inferring a threat from a victim's subjective reaction. And two... But it's not, I'm not so sure it's just a subjective reaction. The circumstances of someone coming out and telling you you have to give up your car, unless they're a service dealer or a family member, would be inherently intimidating. But what you're describing is a crime that has to be committed. Just to piggyback on that, I still don't understand how you're disconnecting the intent from, the with intent to cause death or serious bodily injury. Well, a defendant could have that intent in mind. Let's say a defendant has a diary in which he says, I intend to cause harm to my ex-wife when I take her car. And yet commit the crime of carjacking by simply demanding a car. When a court begins examining what can be inferred from subjective intent, it's really engaging in fact-based analysis instead of an element-based analysis. In addition, the Supreme Court has said that a violent crime must be an active crime. And unless you have an actual threat as opposed to an implied threat, you don't have an active violent crime. The jury instruction for carjacking in the First Circuit actually contains the word demand. A defendant reading that jury instruction would come away thinking a demand alone can achieve carjacking. Now, actually, Ken, doesn't the demand have to be successful? Because of the success, someone comes up to an adult and the adult has a three-year-old. And the person demands the adult parent turn over the three-year-old to the stranger. I think in most circumstances, if we knew the adult did so, we would pretty rapidly infer that the demand was made in a manner that was extraordinarily intimidating. A car isn't a child, but it's getting you at that end of the spectrum. But is it violent as an active crime? I would submit not. That said, in addition, this court should consider whether after... There's just an oddity in the way this law requires people to argue. Yes. Because for purposes of having an R-24C and the enhancement narrow, you're making it so that it would be quite easy for people to be prosecuted for what seems like relatively innocent behavior. And I imagine if you were defending somebody against carjacking, you would suggest that the standard for proof of that element would be considerably higher than we're now suggesting it. So that's just the tension between the two things. The more sensible we construe that statute to have a relatively high threshold of harm that's being visited, the more sensible it is to conclude it fits with 924C. And to get it out of 924C, we have to adopt a view of what Congress meant by carjacking that seems to sweep in things that are pretty strange, such as your husband saying, can I have your car on a day when they happen to rape him in the diary? I really can't stand my spouse. It just seems like a strange way to go about construing 924C by positing a very odd view of what carjacking is. And what you're describing is perhaps what the public and what judges sense is a problem in the sense that 924C seems to defy our gut feelings. No, it's not about the gut feelings. It's just about what does the underlying crime require. And Ellison, based on earlier decisions, said that in the bank robbery context, intimidation meant visiting a fear of bodily harm. And that could be an implied threat, which seems like a sensible idea, whereas what you seem to be suggesting is the right way to understand it is it can be even just an ordinary demand with no implied threat of bodily harm. It could be bank robbery. Sure. And it could be carjacking. And this is evident from the plain language. Now, if this court were to have to rewrite the jury instruction after ruling that an implied threat could qualify, this court is legislating. This is something that Justice Gorsuch warned against in his concurrence denial. I see that my time is up, but if I could briefly conclude my point. In this case, carjacking is overbought, Your Honors, and if this court needs to rewrite a jury instruction, it is legislating new law. Thank you, Your Honors. Good morning, Your Honors. My name is Maiden Schwartz for the United States. Contrary to my colleague's assertion that intimidation can be committed by solely nonviolent means, this court in Henson actually found to the contrary. The defendant in Henson used notes similar to what Cruz imagines here. One of the notes that he used simply said, put small bills in an envelope and hurry. And this court's conclusion, and I'm quoting here, was that Henson's communications clearly were sufficient to raise fears of bodily harm. But their argument is not that if you do make a threat that would be a bodily harm, that's insufficient. Their argument is that you don't even need to make a threat of bodily harm. If the government is prepared to say that under carjacking, you do not need to make a threat of bodily harm? No, Your Honor. I mean that you must make a threat of bodily harm. To have a carjacking by intimidation, there must be a threat of bodily harm. That's not insufficient. Yes, Your Honor. And also, it's the First Circuit's holdings in an analogous context in bank robbery, that intimidation basically means a threat of bodily harm. We just held it sufficient. Correct, Your Honor. But the government is not taking a position that's necessary. For a carjacking by intimidation, the government's position is that threat of bodily harm is required. And that it can be inferred as supposed to do it. Yes, that is important. It doesn't have to be an explicit threat of bodily harm. It can be an implicit threat. And again, that is consistent with this court's decision in Henson, where that note that I mentioned did not contain an explicit threat. The tellers in that case testified that there were no threatening gestures or other sort of visible threats, but that the notes themselves and the context in which they were presented, and I think it's worth pointing out that it wasn't even close. This court said clearly we're sufficient to raise fears of bodily harm. And we know from Castleman that bodily harm can't be committed without force. So that means that committing a crime such as bank robbery, or in this case carjacking, by intimidation, therefore requires a threat of force. We also know from Duenas-Alvarez that imaginative hypotheticals are not sufficient to declare a statute overbroad. So the idea that carjacking could be committed by someone saying, I'd like to have that, without any implied threat of force, one, it doesn't make sense under the statute, because the carjacking requires by force and violence or by intimidation. But two, just imagining a scenario where it might be applicable is not enough. Cruz would have to show that the carjacking statute actually has been applied, either in his own case or in other cases, to circumstances like that. And here we simply have no such example of the carjacking statute being applied in an overbroad manner. Based upon the sufficiency of the three charges here, three victims, what's your theory of the sufficiency of the evidence on the victim who just said, quick look, mostly black, but silver and then a white? So I believe you're referring to the third victim who was raped repeatedly. She was actually, the initial look, the gun was pointed at her face fairly close. She was in the driver's seat and the carjacker pointed the gun at her through the rear passenger door, so we're talking a matter of a couple feet at most. She felt the gun against her head and she testified that she saw it on several occasions and the duration of this encounter was several hours long. So she said it had silver or metal-like parts, so it doesn't match the grok that was found. So what's your theory? Your Honor, the government has never claimed that the same gun was used in all three carjackings, so the government's theory was that he could very well have had three separate guns. The first one was a silver revolver, which also did not match the grok that was seized. The second carjacking was the one that used a black pistol that did. In fact, that witness testified that it looked exactly like the gun that was found in Cruz's home. The third one was black with silver markings, so a third, presumably, weapon. So are you saying that her testimony was sufficient to establish that the gun was operable? Yes, Your Honor. So given this court's prior decisions about what type of testimony is sufficient for the jury to conclude that the gun is real, it does fall within that. We have a witness who saw the gun at close range, who did not describe it as a toy gun or in any way offer anything to suggest that it might be anything other than real. And in addition, we have her behavior, which is that she remained with the carjacker for a long period of time, during which he raped her repeatedly, because she believed that the gun was real. Suppose the BB gun that the defendant pointed to was blue, and she said she saw the gun, felt it against her head, she got a look at it, and it was blue. Would you have, and that was it, would you have sufficient evidence to establish the use of the firearm? That would be a closer question, Your Honor. If you said closer, then you're distinguishing a use of the blue from her use of the silver metallic, which matched the description of the BB gun. Because black with silver, in the jury's experience or in the average person's experience, could very much seem like a real gun, whereas a blue gun, I think the reason you chose that color is because it suggests something other than a real gun. So the point is, black and silver, unlike blue, would fit with a real gun. But we also know there's a BB gun that the defendant pointed to that is black and silver. What is the jury's basis for pointing to one rather than the other without speculation? Well, there was testimony that the cousin who owned the BB gun was in Puerto Rico during the period of the carjackings that the BB gun sat on his desk within arm's reach, very visible, and that he never noticed it missing, never lent it to his cousin, never had any reason to believe that it was anywhere other than on his desk. And the jury was entitled to credit that testimony and to discredit the suggestion that Cruz had any access to that gun during the time. The jury would have been aware of the other two offenses, too, right? Yes, they were all presented together in the same trial. In the other two offenses, in at least one of them, the gun that's described matches the block. And then the other one on my right, maybe it's the same one, the victim testified that she had some knowledge of firearms. Yeah, so the first victim, the permanent victim, saw a silver revolver, which we don't have a silver revolver in this case. She was able to describe the cylindrical mechanism that made her identify it as a revolver. The second victim... Did the government argue that the fact that the evidence was of that strength with respect to a gun being used in the first two was relevant to a determination that was a gun that the victim plaintiff sought and the third one was likely to be a real gun? Yes, Your Honor, because it's a totality of the circumstances analysis. And so the jury had then heard evidence that appeared to show that Cruz had access to a variety of weapons that he used in these carjackings. Just to finish my answer to your previous question, the second victim is the one who explained that she knew the difference between a pistol and revolver and testified as to that. She also testified that the pistol resembled the ones that police officers carry, which also indicated some familiarity with weapons and their uses in various types of weapons. So there was also that testimony to bolster the jury's conclusion that the guns that Cruz used, although they were different weapons, were all real. If Your Honors have no further questions, I'll yield the rest of my time. Thank you. Thank you, Your Honors. I would just like to address the sufficiency question on the battle. The government seems to concede that the standard in the First Circuit falls below requiring proof beyond a reasonable doubt. The jury instructions in this case and First Circuit case law permit a jury to convict a defendant based on layperson testimony that an item appears to be a weapon. I don't think they're reliable on the bottom line, the one who described it physically. She actually described the cylinder moving. Certainly a witness can do that. Yes, but that doesn't establish beyond a reasonable doubt that an item is real. In other weapons contexts... Is there a case, then, in which the government could ever prove that an unfired gun was a gun in the case? Or they don't recover it. They would have to recover it. Well, if they don't recover it, as often happens in these cases. Then it's a state crime. In this case, there are 57 years of a man's life riding on... Is there any circuit that holds that? No, but I'm preserving it for further appellate review. And I know that the Supreme Court is interested in guns. And it's a problem. Because state law can criminalize the use of what appears to be a gun. I submit that federal law... Why would it be a crime under state law? Many state statutes actually criminalize and use the words in their statutes that any crime committed with what appears to be a gun can be an aggravating factor. Here, we're attaching 25 years stacked sentences. Because the absence of the word appears in the statute is the key thing? No. Do the state offenses use the word appears? Yes, but federal law is also clear that it must be a real weapon. That is federal law. State law doesn't require that. No, and it may be. But federal law actually requires that the gun be real. I see that my time is up, and if I could briefly conclude. The standard falls below reasonable doubt, and it's a problem. Did you argue below that the witness has to object and ask the witness testimony to be stricken or argue that it was incompetent testimony? There was no objection below. It's raised for the first sermon of appeal, but it satisfies plain error because 57 years hinge on error. Thank you, Your Honors.